MARY FRAIL, Plaintiff-Appellee, *v.* MARION FRAIL, Defendant-Appellant. Third District   No. 77-179

Opinion filed December 6, 1977.

D. J. McRae, of Kewanee, for appellant.

Joseph A. Dailing and Gerald Brask, Jr., both of Western Illinois Legal Assistance, of Kewanee, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

The present appeal is a case of first impression in Illinois. This case involves an appeal by the defendant, Marion Lester Frail, from the trial court's order which directed the defendant's minor children to make periodic visits to their mother, Mary Sunquist, formerly Mary Frail, who is currently incarcerated in the women's penitentiary at Dwight, Illinois.

Plaintiff was divorced from the defendant-appellant on March 28, 1974. The parties were earlier married and divorced, and during the earlier marriage two minor children were born to them. The divorce decree granted custody of the children to the mother. On April 12, 1976, the custody of the children was transferred to Marion Lester Frail pursuant to his petition to modify the divorce decree to change custody. In support of his petition, the defendant alleged and the trial court found that his former wife was then being held in the Henry County jail without bond awaiting a criminal trial on a charge of murder. The court reserved the mother's visitation rights with the children until such time as she could exercise them. In May of 1976, she was convicted of the alleged shooting death murder of her then husband, John Sunquist, and was sentenced to a term of imprisonment of not less than 14 years nor more than 20 years.

While serving that sentence at the Dwight Reformatory for Women on December 30, 1976, she filed her petition for visitation with her minor children. Marion Frail filed an answer to this petition and alleged that forcing the children to visit their mother at the Dwight facility would be against their best interests. After a hearing on the merits with the testimony of the plaintiff, the defendant, and plaintiff's sister Rose Ann Rasmussen, the trial court ordered visitation twice monthly at the Dwight Reformatory on the first and third Saturdays from 8 a.m. to 6 p.m. with transportation to be provided for the children by Mrs. Rasmussen and her husband, Mr. Rasmussen. This appeal followed.

The issue of whether an incarcerated parent is entitled to visitation with her children in a post-divorce decree ruling by a trial court is a novel question as yet unanswered by Illinois courts. Pursuant to section 18 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 19), the trial court has continuing jurisdiction over the children with respect to care, custody, support and education of the minor children and can in appropriate circumstances grant a change of custody. The court order changing custody from the mother to the father and thereby modifying the divorce decree is not challenged. That very order reserved the issue of the

mother's visitation rights until a later date. The questions now before us are whether the mother can now exercise her reserved rights of visitation while incarcerated at the Dwight Reformatory and whether the children's best interests are served by ordering such visitation at the Reformatory on a periodic basis.

■■ The courts recognize that the welfare of the children is the paramount consideration in determining whether the visitation rights of the noncustodial parent should be denied. Courts are reluctant to deny all visitation rights because of the underlying rationale that parents have a natural or inherent right of access to their children and that the sound public policy of this State encourages the maintenance of strong interfamily relationships, even in post-divorce situations. Only very extreme circumstances require and allow the trial court to permanently deprive a parent of visitation. (See *Malone v. Malone* (4th Dist. 1955), 5 Ill.. App. 2d 425, 126 N.E.2d 505.) However, the matter of visitation privileges rests in the broad discretion of the trial court. *Rodely v. Rodely* (1963), 28 Ill. 2d 347, 192 N.E.2d 347.

■■ Although it is frequently pointed out by reviewing courts that a parent's right to child custody and visitation is not an absolute one, we should also recognize that there is always a strong possibility that the parent out of custody may at some later time acquire that responsibility, and to deny all visitation to the out-of-custody parent would effectively sever all ties between that parent and the child. A more difficult transition for the children in the future would be the result. We also recognize, as did the trial court, that a strong parent-child relationship had been established between Mary Sunquist and her two children. Mrs. Sunquist had custody of the two minor children, ages 6 and 8, at the time of the divorce in 1974, until her incarceration in 1976. To eliminate the possibility of a relationship should Mary Sunquist regain custody of the children does not seem to be in the children's best interests.

The only indication that visitation with the mother had any adverse effect on the children came from the testimony of the defendant Marion Lester Frail. He reported that the children became upset when they visited their mother at the county jail and that they did not wish to visit her again while she was so confined. We treat this testimony, as did the trial court, with some suspicion. We also acknowledge that a county jail with limited facilities may be an improper place of visitation.

■■ We conclude however that the children's best interests demand that visitation with their mother be scheduled even though she is imprisoned for her conviction of a felony. We reach this determination for the reasons set out above and additionally for several policy reasons. The record reflects testimony by the plaintiff that physical arrangements can be made at the Dwight Reformatory for her twice-a-month visits with

the children in a nonprison atmosphere. We note the availability at Dwight of institutional facilities for this type of visitation in a nonprison environment with the absence of guns, of close scrutiny by guards, and of the proximity of hardened criminals to influence the children. We are totally aware of the purpose of our modern-day prisons to both attempt to rehabilitate and to punish. We are also well aware that imprisonment can be a degrading, demoralizing experience. Nevertheless, we are confident that at the Dwight Reformatory Mary Sunquist and her two children can maintain a satisfactory parent-child relationship through visitation absent any of the emotional and physical drawbacks common to ordinary prison life. We believe the inadequacies of the typical county or local jail are not present at the Dwight Reformatory. Moreover we believe the visitation can be a rewarding experience for both parent and child in the present case. The two minor children did not testify as to their own personal desires on this question and even if they had their preference would only be one of the many factors to be considered by the trial court in determining what their best interests were. To deny visitation, as the appellant urges, might well in effect be a permanent denial to Mary Frail Sunquist of all rights to her children during the remainder of their minority, because they would reach majority long before she served her minimum term of 14 years. We therefore are reluctant to overturn a proper exercise of discretion by the trial court in scheduling the visitation. (*Rodely v. Rodely* (1963), 28 Ill. 2d 347, 192 N.E.2d 347.) We find no abuse of that discretion in this case and conclude from examining the record that it manifestly supports the order of the trial court setting visitation.

Because this cause is one of first impression in Illinois we have consulted as persuasive authority similar cases in other jurisdictions. We find them generally to be in accord with the views we express today. See *Chadwick v. Chadwick* (1936), 275 Mich. 226, 266 N.W. 331; *M-L-B v. W-R-B* (Mo. App. 1970), 457 S.W.2d 465; Annot., 88 A.L.R.2d 148, §13 (1963); and 24 Am. Jur. 2d *Divorce and Separation* §801 (1966).

For the foregoing reasons the judgment of the Circuit Court of Henry County is affirmed.

Judgment affirmed.

ALLOY, P. J., and SCOTT, J., concur.